Excuse me. I am Rebecca Kurz arguing on behalf of Mr. Eric Quinn this morning. My client Mr. Quinn is currently serving a three-year period of supervised release which will end in September of 2020. He challenges the district courts in position of a supervised release condition requiring him to disclose a juvenile adjudication for sexual misconduct in the first degree to any current or future significant others who have juvenile children. The sexual misconduct occurred in 2001 when he was age 14 and he exposed himself to his four-year-old sister. So essentially indecent exposure was the offense and those are the only facts we really have about what happened. Mr. Quinn contends that the condition is not reasonably related to the pertinent 3553 sentencing factors. Can I, just procedurally, when was this condition imposed? When Mr. Quinn was originally sentenced there was a standard condition number 13 that's listed in the judgment and that was a broad third-party notification condition. Later the probation officer approached the district court. She wrote a memorandum for the court saying that she wanted to order Mr. Quinn to disclose this sexual misconduct prior adjudication. So that comes later. Okay so it sort of raises in my mind if shouldn't he have challenged the condition when it was first made at the time of his sentencing and or do you have some cases that suggest that we have this is somehow a final order that we have jurisdiction to review? Well I don't have any cases for you that it's a final order. I believe that it is. I think you can challenge modified conditions on appeal. Now it did occur to me that no and you're correct he did not object at the time of sentencing. So my thought was nor did he appeal the issue right? He did not appeal the issue. My feeling on that is essentially part of his the second part of his claim is that this is overbroad and that it's vague and if at the time of sentencing where the language was as directed by the probation officer defendant shall notify third party of risk that may be associated with this criminal conduct. So it's very general and it's very vague and at that point in time he hasn't been directed by his probation officer to do anything. He hasn't been instructed you to tell this person this bit about your history and your criminal conduct. The only way that he could have challenged the condition I believe is to say that it was constitutionally overbroad or vague on its face and I do have a case for you regarding that. It's United States versus Thomas 198 F 3rd 1063. It's an Eighth Circuit case in 1999. In that case the defendant tried to raise a supervised release and the court said it's not right at this time. You haven't been directed by your probation officer to do anything. I'm not going to address that issue until something actually happens and so that we'll know the facts behind it. So I think I think the rightness issue and Thomas addresses that concern your honor. Now as far as the reasonable relationship between the deterrence in this case. The behavior occurred in 2001. It was never repeated in the ensuing years that followed. There's no reasonable relationship to the need to protect the public. There is no evidence. There's no finding of fact that Mr. Quinn is is or ever has been a danger to children. It was a single incident again never repeated. There's no existing findings concerning a risk assessment tool. I think like the static 99 test is something that is used sometimes to assess a person's sex offender traits. Nothing of that nature. It is not an offense that even requires registration under SORNA. Under Missouri law this is a class B misdemeanor. Punishable by up to six months in county jail. It's not a contact offense which would be required under SORNA to need registration. The condition has no rehabilitative purposes. It does not concern Mr. Quinn's need for treatment medical treatment or educational needs. The government says that the hole in our argument is that this court must consider the entire criminal record. All of his past conduct in assessing whether the condition is valid. I want to point the court to a place in the record. In the district court's order imposing this condition it says for good and sufficient cause as shown by the US Probation Office in its memorandum of January 10, 2018. It is hereby ordered and then it goes on to state the district court only referenced the probation officer's memorandum of law. So was there any sort of a hearing with live testimony? No hearing your honor. And the memorandum of law is rather short. It's a page and a half and it refers to only two convictions. The sexual misconduct conviction and then two misdemeanor domestic assaults. It does not refer in just general terms to the pre-sentence investigation report and it doesn't refer to any other convictions other than those that I just stated. If you look at the third paragraph on the first page, last sentence, the offender has advised his girlfriend and the probation office has confirmed that he had informed her about his prior history of domestic violence. So the domestic assaults, which may raise a question of could there be physical harm to a third party, those have already been addressed. He complied with that condition and he disclosed to his current girlfriend that he had those two prior offenses. What is driving the district court's decision to impose this condition is the sexual misconduct adjudication when he was a juvenile. There's no reference to any other past criminal behavior. So in my opinion I don't think that's what the district court was doing. She wasn't looking at the entirety of his criminal conduct. If you do look at his criminal conduct as a whole, you will see that he has, for the most part, between years 2001 and 2013, other than when he was serving his sentence for the felon in possession charge that is the subject of this case, he was out living in the community. He has, I believe he did six months in 2006, 20 days of custody in 2007, 11 months in 2009, 90 days in 2011. Those were the longest periods. There may be a few other where he served a matter of days like in municipal, for municipal court. But for the most part, he's been out in the community. So that means he has had the opportunity to reoffend and has not done so. This is not someone who committed a forcible rape, was in prison for 10 years, then got out and had a condition imposed upon him where you have no track record as to prior criminal sexual history. What? Oh, I see that I'm into my rebuttal time. I'd like to reserve if no further questions. Very well. Thank you, Miss Gers. We're going to hear from Mr. Bowling, then. May it please the court. My name is Kurt Bowling and I appear here for the United States today. On the facts of this case, this order is reasonable and it, in the least restrictive way possible, it forwards the interest in 3553. When you compare the restriction here with other restrictions that this court has approved, this is a very minimal restriction. This court has approved restrictions, for example, in the Stellmacher case that required that the defendant have no contact with his own minor children. They have, in the Fenner case, they require the defendant to get treatment and to pay for it. And there are similar cases with much more restrictive and draconian types of conditions that this court has upheld. I think the judge here was trying to address the issue and the potential risk to third parties in a way that was as, in the least intrusive way possible. So, again, as noted, this meets the 3553 factors for many reasons. It deters criminal contact and protects the public. I think the key fact in this case is the criminal record of this defendant. In between the time of the offense, which was a juvenile offense, and the time that the judge was faced with the question of how to address probation request to the court for this specific condition of release. It is true that the juvenile adjudication that involved the sexual misconduct was at age 13. But as soon as becoming an adult, this defendant had pretty much an unbroken chain of criminality. He has many, many convictions, both felony and misdemeanor. But I think of most importance to the court were the And then there's another conviction later for disorderly conduct, all of which involved female victims, and which involved either in two cases, violence against a particular female victim, and in the third case, threats to another female victim. I think on this record, the district court was entitled to find that there was a continuing concern and vitality in terms of risk to third parties from the juvenile adjudication for sexual misconduct. And doesn't it pale in comparison to his other criminal record? You mean that the juvenile adjudication? How old was he at the time? 14? He was 13. He was 13 years old. He's now whatever he is. I'm not clear. I assume he's approaching his thirties. That would be right. I believe that's my right reading of the record. And so possible fetal alcohol syndrome is a D. H. A. Low I. Q. You almost could say that Quinn started out at life's home plate with two strikes against him. I was struck by the U. S. Attorney's song or a whoever she was at the time discussing the impact of a D. H. A. On the child. Yes, that was Miss Watt Tabor. Oh, yes, Christina, 10,015. And and that that that may well be so, Your Honor. I think I think the question that the judge catch catch mark had to resolve is given this rather significant criminal history, uh, regardless of its cause, there's a mark of Cain, as it were. Can he do anything you ever to absolve himself from? Does his failure at this moment is the fact that he had not committed a similar offense during that entering interim period somehow vitiate any claim that he's likely to commit it again? I think if all we had was him being at, let's say, approximately this age at the time that probation makes his request and no intervening significant criminal history, I think it would be a different case. However, I think there is a significant, I mean, a tremendous amount of criminal history and specifically assault of conduct against women. And I think that is the bellwether here. The key. And I would also address your question by saying that the judge again, I go back to my initial point. The judge saw that there or believed that there was a zone of risk. But the judge, uh, the judge addressed that issue in the least restrictive way possible. The judge required not, not him personally, but probation at on, on his notification to tell a significant other with minor children about the, about the prior conviction. And I think the judge made a very rational decision that those are, those are the types of people who would be within squarely within the zone of risk. The judge did not require him to, uh, you know, I don't believe she could have required him to, to, to register for SORNA. So that's off the table. But, but certainly in, in some kinds of cases, I know there was a case that was argued in November, uh, you know, uh, sex offenders might be, might be ordered not to congregate, not to go where minors congregate, for example. That's a, that's a fairly standard provision. So, so those broader provisions were not put into place here. I think the judge was looking at that issue from the perspective of what can I do to, uh, to address the zone of risk in a way that makes sense given the facts of this case. And I think she did so in a very rational way. Do you think that the, the order, um, that's in question here is more restrictive on the, um, appellate than this special condition 13 in the judgment and commitment order? It's, you'll have to remind me which, which case. Well, that's the one that says as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance. I recall, yes. The, the original, the original condition that Judge Whipple put into place. I think it is less restrictive in the sense that it is less, it is, it is much more narrow. It is more narrowly tailored to a specific issue. Um, and so I think, uh, the, the other one is obviously broader in potential application, especially given the, the, the domestic abuse, the, the, the, the assault. But why doesn't this, why does it, this, the existence of this special condition, which was agreed to and, and, and was in place, why doesn't it cover this, what the probation officer wanted to do here? It may well, your honor. Um, and I can't answer for why they went to the judge and asked for a more specific. But that's not, but that's not the position that the United States has taken in the briefing in the case. Well, I, I, I think the difference would be that their probation officer wanted to have a specific mechanism in place to address how, how to address this issue of how to go forward with the notification. I guess the question I, to get down to my real question. Sure. I want to know if the government is, is declining to assert that this case is, uh, resolved by the existence of special condition 13. Is that something you're not arguing? And that we should just ignore special condition 13. And it, it, the issue is not one that I had thought of. I, I, as you may know, I did not, I was not the author of the brief, although I thought it was very well written by my colleague. Uh, we have not interposed that issue, obviously. So I think, I'm not sure. Doesn't that feed into my jurisdictional question? Yes. Which is why if, if we had special condition 13 at the time of sentencing, wouldn't the time to appeal it have been after sentencing and not two years later when we're implementing it? And I would, I would agree with my colleague that the, that the case that she cites is one of the, is, is the case I found as being one of the, the, probably the leading cases. Um, there is an interesting case. Um, it's actually an unpublished, uh, district court opinion called the United States versus Leiter, L-I-T-E-R, the 2000 Westlaw 455-1213, in which Judge Schiltz actually discusses this issue at some length. So I might, uh, recommend that to you as something, uh, it's a very thoughtful, uh, uh, discussion and, and taking, I think, more of your view, the, uh, the view of your question, Judge Grinder, on this issue. That it would not be appealable? Yes. That's the conclusion. Well, well, essentially that it was not addressable, that it should have been addressed. It's a little bit different context, but the, the, the notion that it should have been addressed at the time that the condition was first, uh, was first, um, implemented and not later, I think. Is that taking a brief? No, it's not. Again, I was not, I, I was not thinking along these lines initially. In other words, if it's, uh, if you think it's of any relevance to us now, you might want to send a 28-J letter. Yes, Your Honor. I would be. Because I'm not very good about copying down citations. It's, especially those Westlaw citations. They're a little long. I would be happy to do that, uh, for the Court. Was, again, the, the basis or impetus for this challenge, uh, now challenged condition came and rolled out as a result of the probation officer's recommendation? Correct. That, that, I believe the probation officer became aware of the specific situation with the, with the, with the, with this defendant. Based upon any current conditions of any kind that would have, uh, prompted the officer to develop this issue? Well, I think, I think it was based on condition 13. The notion that it was a subset of a specialized request within the context of the existing condition. I think occasioned by the probation officer becoming aware of him having a relationship with a person with minor children and, um, also wanting to have some specific machinery in place to, as to how to do that notification. Let's see, and Quinn was given notice of this, of course. Did he make any objection at the time he got a notice? To address the last question asked by Judge Wallman, what prompted it was that Mr. Quinn went to his probation officer and said, I would like to move in with this woman. And then she then prepared the memorandum on January 10 of 2018. Both parties briefed the issue, but there was no hearing or oral argument on it. Um, again, um, opposing counsel refers to the domestic violence assaults at age 19. Those had already been disclosed. That's stated in the memorandum that he had already told his girlfriend about those two incidents. So that's not the impetus behind the condition of release. Um, what is most striking about his prior criminal conduct is his addiction to controlled substances. If this man is going to re-offend, it's probably going to be a controlled substance offense. It's not going to have anything to do with sexual misconduct or indecent exposure. That has not occurred in the past, uh, 18 years. It was only in 2001. It was an isolated incident. Um, and the district court, the judge who handled the original sentencing, recognized that fact. And he imposed special conditions about getting substance abuse counseling, mental health treatment to address the, uh, ADHD and the bipolar disorder that he suffers from. So the sentencing judge geared his conditions directly to what would be the obvious problem here. And that's his addiction problem. Um, I believe there's nothing else unless the court has further questions. And again, um, I guess you've made your argument. Uh, we might, you know, I would never say we think about it in this concept, but the lay people would say, well, what's the big deal? It's a big deal to him. He really did not want, that is embarrassing. He does not want to have to disclose that. And luckily she stuck with him. Um, but to me, there's only so far the government should be able to interpose itself into your personal relationships with especially intimate personal relationships such as this. I suppose set against that is the, well, maybe not in this case, but I'm sure in your practice and all prosecutors have seen this and defense attorney, I'm not saying that Mr. Quinn is one of these who goes from girlfriend to girlfriend. They don't know anything about this person's best behavior until the person commits something like this and then moves on to another girlfriend. I'm not saying that Quinn is this person at all. Sure. Although he does have, well, I'm going to have to recite again, uh, the difficulties that he has faced in his life. One point, um, when I read the sentencing transcript from two 50, 2015, uh, judge Whipple basically said square up, uh, because at one point he said, uh, Mr. Quinn said, I have trouble talking to people. I don't know what relevance that is, but it is interesting. At least to me, I think judge Whipple was right. If you're going to have the benefit of counseling, you've got to talk to your counselor. It's the only note that, um, the memorandum was prepared in January of 2018. I know we briefed the issue a few months prior to that, I believe. So he's stuck with her. He's trying. Thank you very well. Counsel. We appreciate your arguments today. The case will be submitted and